1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN HARRIS,<br><br>　　　　　　Plaintiff,<br><br>　　　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 10-424 RNB<br><br>ORDER REVERSING DECISION OF<br>COMMISSIONER AND REMANDING<br>FOR FURTHER ADMINISTRATIVE<br>PROCEEDINGS |

17

18

19

The Court now rules as follows with respect to the two disputed issues listed in the Joint Stipulation.[1]

20

21

22

23

1.  The Administrative Law Judge ("ALJ") failed to properly consider the medical evidence of record regarding plaintiff's mental impairment.

Plaintiff contends that, in omitting any mental limitations from his assessment

24

25

26

27

28

---

[1]  As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

of plaintiff's residual functional capacity ("RFC"), the ALJ failed to properly consider the opinions of Dr. Bagner (a consultative examiner), Dr. Polizos (a State agency physician), and Dr. Kivowitz (the medical expert who testified at the administrative hearing).

Dr. Bagner opined that plaintiff would have "zero to mild limitations maintaining concentration and attention and completing simple tasks"; "mild limitations interacting with supervisors, peers and the public, competing tasks and completing a normal workday without interruption"; and "mild to moderate limitations handling normal stresses at work." (See AR 307.)  Dr. Polizos opined, based on his review of the medical record, that plaintiff would have moderate difficulties in maintaining concentration, persistence, or pace; was moderately limited in the ability to understand and remember detailed instructions; was moderately limited in the ability to carry out detailed instructions and the ability to sustain an ordinary routine without special supervision; was moderately limited in the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior and to adhere to basis standards of neatness and cleanliness; and was moderately limited in the ability to set realistic goals or make plans independently of others.  Based on this limitations, Dr. Polizos opined that plaintiff was able to perform simple tasks.  (See AR 330, 334-35.)  Dr. Kivowitz opined at the administrative hearing that plaintiff had mild limitations with respect to daily living activities, mild to moderate social limitations, mild to moderate concentration limitations, moderate difficulty doing very complex work, and moderate difficulty being around a lot of people.  (See AR 24-35.)

Although the ALJ referenced the foregoing opinions of Dr. Bagner in his decision (see AR 17), the ALJ did not state what weight he was giving them.  Although the ALJ also referenced the testimony of Dr. Kivowitz regarding plaintiff's

Global Assessment of Functioning score (see id.), the ALJ did not reference any of the foregoing opinions of Dr. Kivowitz or state what weight he was giving them. Nowhere in his decision did the ALJ even mention Dr. Polizos's opinions. Nor did the ALJ include a limitation to simple tasks in his RFC assessment. Indeed, despite his finding at Step Two of the Commissioner's sequential evaluation process that plaintiff suffered from a "severe" mental impairment,[2] which in turn was based on the ALJ's own finding that plaintiff had moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence or pace (see AR 15-16), the ALJ did not include any mental limitations in his RFC assessment. (See AR 16.)

The Commissioner contends that Dr. Bagner's "finding" that plaintiff would be significantly better in less than six months if she received psychiatric treatment "alone cast serious doubt on the alleged severity of plaintiff's mental impairment. (See Jt Stip at 14.) However, contrary to the Commissioner's characterization, Dr. Bagner did not "find" that plaintiff **would** be significantly better in less than six months if she received psychiatric treatment; rather, he merely speculated that, if plaintiff received psychiatric treatment, "plaintiff **should** be significantly better in less than six months." (See AR 307 (emphasis added).) Moreover, the Court is unable to consider any reasons for rejecting an expert opinion that were not articulated by the ALJ. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Ceguerra v. Sec'y of Health & Human Svcs., 933 F.2d 735, 738 (9th Cir. 1991) ("A

---

[2]     Under the Commissioner's regulations, a "severe" mental impairment is one that significantly limits the person's mental ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The mental ability to perform basic work activities includes understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b).

1   reviewing court can evaluate an agency's decision only on the grounds articulated by
2   the agency."). Here, the ALJ did not state in his decision that Dr. Bagner's "finding"
3   was the reason he was not including in his RFC assessment any of the mental
4   limitations to which Drs. Bagner, Polizos, and Kivowitz had opined.

5           Further, the Commissioner's contention that it was unnecessary for the ALJ to
6   discuss Dr. Polizos's opinions (see Jt Stip at 15-16) flies in the face of Social Security
7   Ruling[3] 96-6p, which provides that findings by a State Agency consultant physician
8   regarding the nature and severity of an impairment must be treated as expert opinion
9   evidence and may not be ignored by the ALJ.   Thus, contrary to the Commissioner's
10  contention, it was incumbent on the ALJ to explain in his decision the weight given
11  to the opinions of Dr. Polizos.  To the extent that the Commissioner has purported to
12  proffer reasons that would have permitted the ALJ to reject Dr. Polizos's opinions
13  (see Jt Stip at 16), the Court is unable to consider those reasons under the authorities
14  cited above.  Accordingly, the Court is compelled to find that the ALJ erred here by
15  failing to either properly reject the limitations to which Dr. Polizos opined or include
16  those limitations in his hypothetical to the vocational expert.  Compare Bain v.
17  Astrue, 319 Fed. Appx. 543, 546 (9th Cir. 2009) (now citable for its persuasive value
18  pursuant to Ninth Circuit Rule 36-3) (reversing and remanding where the ALJ had
19  failed to discredit or incorporate the limitations enumerated by the state agency
20  consultant, including that the claimant was moderately limited in her ability to accept
21  instructions and respond appropriately to criticism from supervisors and moderately
22  limited in her ability to respond appropriately to changes in the work setting) with
23  Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (holding that the ALJ's
24  hypothetical adequately incorporated the medical expert's opinion concerning the
25  claimant's limitation of concentration, persistence and pace because the ALJ

26

27          [3]     Social Security Rulings are binding on ALJs.  See Terry v. Sullivan, 903
28  F.2d 1273, 1275 n.1 (9th Cir. 1990).

                                            4

1  expressly had instructed the vocational expert to credit the medical expert's opinion

2  testimony that the claimant had "deficiency to concentration, persistence and pace

3  often"); see also, e.g., Figueroa v. Astrue, 2010 WL 3789576, *1-*2 (C.D. Cal. Sept.

4  27, 2010) (reversing and remanding where the ALJ failed to address all of the

5  opinions of the State agency physician, including the opinions that the claimant was

6  "moderately limited" in various work-related respects).

7        Finally, the Court rejects the Commissioner's contention that the ALJ's error

8  in ignoring Dr. Polizos's opinions was harmless. This is not an instance in which the

9  Court "can confidently conclude that no reasonable ALJ, when fully crediting [the

10  opinions of Dr. Polizos], could have reached a different disability determination."

11  See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

12

13        2.   The ALJ failed to make a proper adverse credibility determination.

14        With respect to Disputed Issue No. 2, the Court concurs with plaintiff that the

15  ALJ failed to make a proper adverse credibility determination with respect to

16  plaintiff's subjective pain and physical limitations testimony.

17        The law is well established in this Circuit that, where the claimant has

18  produced objective medical evidence of an impairment or impairments that could

19  reasonably be expected to produce some degree of pain and/or other symptoms, and

20  the record is devoid of any affirmative evidence of malingering, the ALJ may reject

21  the claimant's testimony regarding the severity of the claimant's pain and/or other

22  symptoms only if the ALJ makes specific findings stating clear and convincing

23  reasons for doing so. See, e.g., Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996);

24  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d

25  341, 343 (9th Cir. 1991); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).

26        Since the ALJ did not make an express finding of malingering here, but did

27  expressly find that "[p]laintiff's medically determinable impairments could

28  reasonably be expected to cause the alleged symptoms" (see AR 17), the issue before

5

the Court is whether the ALJ provided reasons for his adverse credibility determination that satisfy the "clear and convincing" standard set forth above. The reasons provided by the ALJ were as follows (see AR 17)[4]:

    1.   "The claimant did not complain of any adverse side-effects from any prescribed or over the counter medication. She did not seek any new or different treatment for pain."

    2.   "[T]he record indicates that the claimant is able to perform a full range of activities of daily living, including caring for her personal needs and performing other household everyday chores."

    3.   "The consulting internist, Dr. Lim, opined that plaintiff was restricted to standing and/or walking about 6 hours in an eight-hour workday with appropriate breaks. She would be able to lift and/or carry 20 pounds occasionally and 10 pounds frequently with pushing and pulling including the operation of hand and foot controls without limit. The claimant had a postural limitation, occasional stooping."

The Court is unable to find that the first "reason" articulated by the ALJ

---

[4]    In addition to the three reasons listed by the Court, the ALJ referred in the same paragraph to Dr. Kivowitz's testimony and Dr. Bagner's opinions regarding plaintiff's mental impairment. Since the ALJ did not ask plaintiff any questions about her mental impairment at the administrative hearing, the Court fails to see the relevance of Dr. Kivowitz's testimony and Dr. Bagner's opinions regarding plaintiff's mental impairment to the ALJ's determination of the credibility of plaintiff's subjective pain and physical limitations testimony. Further, under the authorities cited above, the Court is unable to consider the Commissioner's assertion that "[t]he physical capacity required to assault someone to the point of a three-year prison sentence would seem not to comport with an inability to engage in any physical activity by virtue of grave and agonizing back pain" (see Jt Stip at 31) because the ALJ did not articulate that "reason" in support of his adverse credibility determination.

1    constitutes a "clear and convincing" reason for rejecting plaintiff's subjective pain

2    testimony.    The only medication about which the ALJ inquired if plaintiff

3    experienced any side effects was the nitroglycerin she took for her heart pain.  (See

4    AR 32-33.)  The ALJ did not ask plaintiff if she experienced any side effects from

5    either of the prescribed pain medications listed on her medication list dated May 5,

6    2009.   (See AR 193.)   Nor did the ALJ ask plaintiff any questions about the

7    effectiveness of those pain medications.

8         As to the second "reason" articulated by the ALJ, the Court notes that the ALJ

9    failed to cite and the Court has been unable to locate where the record supposedly

10   indicates that plaintiff is able to perform "other household everyday chores."  In her

11   Daily Activities Questionnaire, plaintiff indicated that she did no cooking; and, in

12   response to the question, "What household chores are you able to do (i.e., cleaning,

13   laundry, maintenance, ironing, etc.), plaintiff wrote in "Homeless."  (See AR 130.)

14   Plaintiff's administrative hearing testimony about not engaging in daily activities (see

15   AR 29) also was consistent with the information that plaintiff provided to Dr. Bagner,

16   who stated in his report that he considered plaintiff to be a "reliable historian."  Dr.

17   Bagner noted in his report that plaintiff lived on the streets and did not do household

18   chores or daily activities.  (See AR 304, 305.)  Further, the Court finds that the ALJ's

19   statement that "[a]ctivities of daily living no matter how limited are inconsistent with

20   significant pain" evidences a fundamental misunderstanding of controlling Ninth

21   Circuit law on credibility determinations.  See, e.g., Vertigan v. Halter, 260 F.3d

22   1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain

23   daily activities, such as grocery shopping, driving a car, or limited walking for

24   exercise, does not in any way detract from her credibility as to her overall disability.

25   One does not need to be 'utterly incapacitated' in order to be disabled."); Gonzalez

26   v. Sullivan, 914 F.3d 1197, 1201 (9th Cir. 1990) (holding that daily activities may not

27   be relied upon to support an adverse credibility determination unless the ALJ makes

28   an explicit finding to the effect that plaintiff's ability to perform those activities

7

1   translated into the ability to perform appropriate work activities on an ongoing and

2   daily basis); <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security

3   Act does not require that claimants be utterly incapacitated to be eligible for benefits,

4   . . . and many home activities are not easily transferable to what may be the more

5   grueling environment of the workplace, where it might be impossible to periodically

6   rest or take medication.").

7       Finally, the Court finds that the fact that plaintiff's testimony regarding her

8   inability to lift and carry due to her back pain was contradicted by the consultative

9   examiner's opinion is not in itself a "clear and convincing" reason for rejecting

10  plaintiff's subjective pain testimony because it seemingly imposed on plaintiff a

11  burden that she did not have under governing Ninth Circuit law.  <u>See</u> <u>Cotton</u>, 799

12  F.2d at 1407 ("Requiring full objective confirmation of pain complaints before

13  believing them 'would overlook the fact that pain is a highly idiosyncratic

14  phenomenon, varying according to the pain threshold and stamina of the individual

15  victim,' and it would trivialize the importance that we have consistently ascribed to

16  pain testimony, rendering it, in the final analysis, almost superfluous.").

17

18                       **CONCLUSION AND ORDER**

19      The law is well established that the decision whether to remand for further

20  proceedings or simply to award benefits is within the discretion of the Court.  <u>See</u>,

21  <u>e.g.</u>, <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>McAllister</u>, 888 F.2d at

22  603; <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).  Remand is warranted

23  where additional administrative proceedings could remedy defects in the decision.

24  <u>See, e.g.</u>, <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984); <u>Lewin</u>, 654 F.2d at

25  635.  Remand for the payment of benefits is appropriate where no useful purpose

26  would be served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d

27  525, 527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v.</u>

28  <u>Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily

8

1    delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

2        Weighing in favor of a remand for further administrative proceedings here is

3    the fact that this is not an instance where no useful purpose would be served by

4    further administrative proceedings.  Rather, additional administrative proceedings

5    conceivably could remedy the defects in the ALJ's decision.

6        The Court is mindful of Ninth Circuit case authority holding that "the district

7    court should credit evidence that was rejected during the administrative process and

8    remand for an immediate award of benefits if (1) the ALJ failed to provide legally

9    sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that

10   must be resolved before a determination of disability can be made; and (3) it is clear

11   from the record that the ALJ would be required to find the claimant disabled were

12   such evidence credited." See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004);

13   see also, e.g., Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S.

14   1038 (2000)[5]; Smolen, 80 F.3d at 1292; Varney v. Secretary of Health & Human

15   Servs., 859 F.2d 1396, 1399-1401 (9th Cir. 1988).   Under the foregoing case

16   authority, when this test is met, the Court will take the improperly discredited

17   testimony as true and not remand solely to allow the ALJ another opportunity to make

18   specific findings regarding that testimony.  This rule applies not only to a claimant's

19   improperly discredited excess pain and other subjective symptom testimony, but also

20   to lay witnesses' improperly discredited testimony, and to improperly discredited

21   opinions of a treating or examining physician.  However, in Connett, 340 F.3d at 876,

22   the panel held that the "crediting as true" doctrine was not mandatory in the Ninth

23   Circuit.  There, the Ninth Circuit remanded for reconsideration of the claimant's

24   credibility where the record contained insufficient findings as to whether the

25

26   _____

27       [5]   In Harman, the Ninth Circuit noted that this three-part test "really
     constitutes a two part inquiry, wherein the third prong is a subcategory of the
28   second."  Harman, 211 F.3d at 1178 n.7.

9

1    claimant's testimony should be credited as true.  See id.

2         Based on its review and consideration of the entire record, the Court has

3    concluded on balance that a remand for further administrative proceedings pursuant

4    to sentence four of 42 U.S.C. § 405(g) is warranted here.  Accordingly, IT IS

5    HEREBY ORDERED that Judgment be entered reversing the decision of the

6    Commissioner of Social Security and remanding this matter for further administrative

7    proceedings.[6]

8

9    DATED:  December 27, 2010

10

11                                                _____

12                                                ROBERT N. BLOCK
                                                  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28       [6]       It is not the Court's intent to limit the scope of the remand.

                                          10